## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Nicholas Cox                      )
                                  )
    Plaintiff,          )
                                  )
v.                                )    Case No. 5:22-cv-03154-SAC
                                  )
Jeff Zmuda, et al.                )
                                  )
    Defendant.          )

### *MARTINEZ* AFFIDAVIT OF SARAH MADGWICK, LCMFT CCHP

Pursuant to 28 U.S.C. § 1746, Sarah Madgwick, LCMFT CCHP, states under oath as follows:

1.    My name is Sarah Madgwick. I am over eighteen years of age, suffer from no impairment, and am otherwise legally competent to make this affidavit.

2.    I obtained a master's degree in Family Therapy from Friends University in 2017. I have been a Licensed Clinical Marriage and Family Therapist (LCMFT) since 2020, and a Certified Correctional Health Professional (CCHP) since 2022.

3.    I have worked as an LMFT or LCMFT for the past five and a half years. Prior to working at El Dorado Correctional Facility, I worked in a group non-profit practice as both an intern and licensed clinician. In 2018, I began working in correctional health, and have previously worked as a behavioral health professional providing one-on-one care; the behavioral health supervisor for the mental health unit; as the behavioral health director over all behavioral health departments at El Dorado Correctional Facility ("EDCF").

4.    In August of 2021, I became the Health Services Administrator ("HSA") at El Dorado Correctional Facility ("EDCF") for Centurion of Kansas, LLC ("Centurion"). Centurion is the contracted provider of medical services for Kansas Department of Corrections facilities. As the HSA at EDCF, I am responsible for managing the overall operations of the contracted clinical program here.

1

**EXHIBIT 5**

5.     The matters stated in this affidavit are based on my personal knowledge and review of the medical records of Nicholas Cox, KDOC #98253, as maintained by Centurion as custodian on behalf of the Kansas Department of Corrections ("KDOC").

6.     I am familiar with the retention of medical records by Centurion and KDOC. The case file, records, and notes for patients, including Mr. Cox, contain opinions, acts, and events made at or near the time of entry by a person with knowledge and were made and kept during the regularly conducted business activity by Centurion and KDOC. These records were made in the ordinary course of the provision of health care services to inmates in custody. It was a regular business activity of Centurion and KDOC to make and keep such records. I am relying on my personal recollection and the information contained in Mr. Cox's case file, records, and notes in accordance with standard medical health professional practice. I have given the opinions stated herein with a reasonable degree of certainty.

7.     The following is a non-exhaustive summary of the care and treatment provided to Mr. Cox related to the specific medical issues raised in his present complaint:

8.     On February 3, 2021, Mr. Cox saw a provider after reporting pain in his lower right leg. Mr. Cox reported that this pain had lasted for a week. He also reported a family history of blood clots, but denied any family or personal history of bleeding or clotting disorders. The provider observed no swelling noted and good circulation in his toes. Mr. Cox was educated about potential conditions, advised to attempt to do exercise in his cell, and advised to request sick call if the pain persisted or became worse.

9.     On February 5, 2021, Mr. Cox was seen in the cell house clinic for continued pain. He had no noted history of blood clots at the time but was admitted to the infirmary for observation, and had labs drawn.

EXHIBIT 5

10.    On February 8, 2021, an onsite ultrasound of Mr. Cox's lower right leg was recommended. This was performed on February 10, 2021, and found a "proximal DVT of right leg." Mr. Cox was placed on Xarelto, a blood thinning medication, to treat this condition for an initial 60-day prescription.

11.    On February 14, 2021, Mr. Cox refused nurse sick call to address pain and swelling in his leg, stating "I don't want to come to NSC."

12.    On March 18, 2021, Mr. Cox was seen by a provider for chronic care. He was given instructions on exercises to utilize in his cell.

13.    On April 19, 2021, a provider followed up at the close of Mr. Cox's 60-day Xarelto medication, ordering a follow-up ultrasound in mid-June to confirm that the DVT had resolved. The provider also started him on an aspirin regime.

14.    On June 11, 2021, the scheduled follow-up ultrasound found that Mr. Cox still had a right popliteal and infrapopliteal DVT. He was restarted on Xarelto for an additional 30 days. On July 13, 2021, this prescription was renewed for an additional 30 days.

15.    On August 16, 2021, Mr. Cox had a nurse visit where he stated "I made a mistake. this blood clot/dvt has been going on much longer than i said it has been for over a year now sometimes better and sometimes worse. i am worried about permanent damage to the vein." This reported timeframe was different from his initial report in February that he had only experienced the issue for a week. A provider saw Mr. Cox the next day, increased his Xarelto prescription from 15 mg/day to 20 mg/day, and recommended an outside appointment with a vascular surgeon.

16.    On September 2, 9, and 10, 2021, Mr. Cox was seen by providers regarding numbness in his leg right leg, and on September 13, 2021, the outside consult with a vascular surgeon was approved. The first vascular surgeon was unable to see Mr. Cox until October. On

EXHIBIT 5

September 15, 2021, Centurion staff rescheduled Mr. Cox with another provider who could see him two days later on September 17, 2021.

17.     On September 17, 2021, Mr. Cox visited Dr. Ryan Beard, a cardiology specialist. Dr. Beard recommended that Mr. Cox continue Xarelto for 12 months, and to consider a hypercoagulation work up. Dr. Beard described the condition as "unexplained DVT."

18.     From November 19 to 24, 2021, Mr. Cox was transported to Johnson County, Kansas for a court appearance.

19.     On January 26, 2022, an outpatient request was submitted for the recommended 5-month cardiology follow-up. On February 15, 2022, Mr. Cox's ultrasound follow-up returned negative for any clots. On February 16, 2022, Mr. Cox stated that he thought his problems may be diabetes-related, and requested a diabetes test, which was scheduled. On February 21, 2022, Mr. Cox refused the cardiology follow-up because he believed it was holding up his transfer to another facility. His anticoagulants were also stopped at this time. On February 23, 2022, Mr. Cox also refused a lab draw of blood.

20.     On March 21, 2022, Mr. Cox again reported pain in his right lower leg; the nurse staff referred him to see a provider. The next day, Mr. Cox was seen by a provider who instructed him on increasing movement as possible.

21.     On July 7, 2022, Mr. Cox reported that his blood clot was back. Upon evaluation by a nurse, he was scheduled for urgent/emergent sick call with a provider, who he saw the same day. That provider ordered injections of Lovenox for three days (six times total, once every 12 hours), an anticoagulant that helps prevent blood clots. He was then taken to Susan B. Anthony Memorial Hospital for an emergent ultrasound. After this course of Lovenox, oral Xarelto was restarted.

22.     On July 19, 2022, Mr. Cox refused a chronic care appointment. On July 20, 2022, Mr. Cox refused a re-draw of a lab sample, which was needed due to the previous sample having

4

EXHIBIT 5

been out of stability upon delivery to the lab. Mr. Cox continued to refuse other treatment, including: an ultrasound on July 25, 2022; a lab draw on August 11, 2022; nurse sick calls on August 14, 2022 and September 5, 2022; and a doctor sick call on October 14, 2022, despite stating that he wanted to speak to a provider about stopping his medication. On August 23, 2022, Mr. Cox requested and was placed on a cardiac diet.

23. On October 18, 2022, Mr. Cox affirmed that he stopped taking his Xarelto but reported that his "clots got hot and painful."

24. On October 19, 2022, Mr. Cox was seen by a provider and a handheld ultrasound revealed no evidence of blood clots. Mr. Cox was again educated about exercises to stretch leg muscles and engage in movement in his cell. He agreed to resume Xarelto.

25. On October 28, 2022, Mr. Cox was seen by a provider for a chronic care appointment. On November 17, 2022, he was again seen for a chronic care appointment. His next chronic care appointment is scheduled for April 26, 2023 (six month period).

26. Regarding weight gain, Mr. Cox's weight in the past 18 months has ranged from 242 pounds to 261 pounds, and as of October 28, 2022 was reported at 250 pounds.

27. Mr. Cox is checked on, per policy, five times a week by behavioral health staff. He has not been diagnosed with depression.

Pursuant to 28 U.S.C. § 1746, the above statements are true and based upon my personal knowledge and expertise to which I am competent to testify at trial. I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NOT.**

1/17/23
Date

Sarah Madgwick, LCMFT CCHP

5

EXHIBIT 5