IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICHOLAS COX,

    **Plaintiff,**

    v.                                  CASE NO. 22-3154-JWL

JEFF ZMUDA, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On May 30, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 56) ("MOSC") directing Plaintiff to show good cause why his claims in Count II of his Second Amended Complaint (Doc. 11) ("SAC") should not be dismissed for the reasons set forth in the MOSC. This matter is before the Court on Plaintiff's response (Doc. 57).

The facts alleged in support of Count II are set forth in detail in the Court's MOSC. In summary, Plaintiff alleges the denial of equal protection "for keeping [him] in segregation for 2 1/2 years on Holdover Status when it is contrary to KDOC policy for Holdover Prisoners." (Doc. 11, at 2.) Plaintiff also alleges that the length of time he has spent on Holdover Status is not that of a typical Holdover Status inmate, and the denial of yard in violation of KDOC policy is a significant and atypical hardship compared to a typical Holdover Status inmate. *Id*. at 4.

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).

Plaintiff argues in his response to the MOSC that he does not have the same privileges as those in general population. (Doc. 57, at 2.) The *Martinez* Report provides that Holdover Status is generally used when the Department needs to house a resident away from general population but plans to transfer the resident to a different facility or out of state in the very near future. (Doc. 34; Exhibit 7, ¶ 11.) Since residents in Holdover Status are usually not management problems or in trouble, this status is used until a transfer can be accomplished because residents

2

in this status are afforded more privileges than some other classifications in RHU.[1] *Id*.

The Court found in the MOSC that Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration). Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

The Court also found in the MOSC that Plaintiff failed to allege an equal protection violation. The Court found that Plaintiff failed to show that he was treated differently than similarly situated inmates.[2] In his response to the MOSC, Plaintiff asks for limited discovery "to not only show the hundreds of inmates who sat for years on Holdover Transfer Status, but to identify all the Surenos, affiliates, or people like [Plaintiff] who were transferred to medium compounds or minimums to get away from the violence that the max yards enforce." (Doc. 57, at 2.) Again, his response suggests that other inmates were also held in Holdover Status for long periods of time.

---

[1] The Report also notes that Plaintiff has since been moved to Protective Custody Status.
[2] Although Plaintiff argues that he was treated differently than other inmates in holdover status, in his Amended Complaint he claimed that he told his grandmother, in reference to Holdover Transfer Status, that "there were people in segregation for three years on that 'temporary' status. Lots of people." *See* Doc. 6–1, at 3.

Plaintiff has not shown that the other inmates in Holdover Status were similarly-situated to Plaintiff. As noted in the MOSC, Plaintiff remained on Holdover Status due to STG concerns, as evidenced by repeated altercations/assaults occurring immediately upon his release from restricted housing,[3] and the *Martinez* Report (Docs. 34–44) filed in his case provides that efforts to transfer him proved difficult based on the alleged STG affiliation/issues. Plaintiff has not alleged that other inmates on Holdover Status faced the same obstacles to transfer. *See Jordan v. Federal Bureau of Prisons*, 191 F. App'x 639, 649 (10th Cir. 2006) (unpublished) (where plaintiff argued that other inmates similarly situated to him remained in general population while plaintiff was housed in administrative detention, the court found that plaintiff "provided no actual examples of any of the inmates to whom he refers").

In his response to the MOSC, Plaintiff argues that "[t]he defendants have not produced evidence of what states they have tried to send [Plaintiff] to, if they followed policy, or any thing other than an assertion that they tried to interstate compact [Plaintiff]." (Doc. 57, at 1.) The Court held in the MOSC that Plaintiff's argument that the KDOC violated its own policies does not save his claim. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).

Plaintiff has failed to show good cause why his claims in Count II of his SAC should not be dismissed for the reasons set forth in the Court's MOSC.

---

[3] In his Motion for Protective Order (Doc. 20), Plaintiff sought injunctive relief in the form of an order directing EDCF staff to, among other things, not put him "in any more situations which can cause him violence or make him a target." (Doc. 20, at 2.)

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claims in Count II of his SAC are **dismissed**.

**IT IS SO ORDERED**.

**Dated July 14, 2023, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**